1   SEAN C. CUNNINGHAM, Bar No. 174931
    sean.cunningham@dlapiper.com
2   ERIN P. GIBSON, Bar No. 229305
    erin.gibson@dlapiper.com
3   EDWARD SIKORSKI, Bar No. 208576
    ed.sikorski@dlapiper.com
4   JACOB D. ANDERSON, Bar No. 265768
    jacob.anderson@dlapiper.com
5   PETER MAGGIORE, Bar No. 292534
    peter.maggiore@dlapiper.com
6   DLA PIPER LLP (US)
    401 B Street, Suite 1700
7   San Diego, California 92101-4297
    Telephone: 619.699.2700
8   Facsimile: 619.699.2701

9   JAKE ZOLOTOREV, Bar No. 224260
    jake.zolotorev@dlapiper.com
10  ERIK R. FUEHRER, Bar No. 252578
    erik.fuehrer@dlapiper.com
11  DLA PIPER LLP (US)
    2000 University Avenue
12  East Palo Alto, CA 94303-2214
    Telephone: 650.833.2000
13  Facsimile: 650.833.2001

14  Attorneys for Plaintiff APPLE INC.

15

UNITED STATES DISTRICT COURT

16

NORTHERN DISTRICT OF CALIFORNIA

17

| | |
|---|---|
| 18  APPLE INC., | CASE NO. 5:19-cv-638 |
| 19         Plaintiff, | **COMPLAINT FOR DECLARATORY JUDGMENT OF NONINFRINGEMENT** |
| 20  v. | **DEMAND FOR JURY TRIAL** |
| 21  FUNDAMENTAL INNOVATION SYSTEMS INTERNATIONAL LLC; and | |
| 22  FUNDAMENTAL INNOVATION SYSTEMS INTERNATIONAL | |
| 23  HOLDINGS LLC, | |
| 24         Defendants. | |

25

26      Plaintiff Apple Inc. ("Apple") files this Complaint for Declaratory Judgment of

27  Noninfringement against Defendants Fundamental Innovation Systems International LLC

28  /////

("FISI") and Fundamental Innovation Systems International Holdings LLC ("FISI Holdings") (collectively "Defendants"), and in support of its Complaint alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for a declaratory judgment of noninfringement arising under the patent laws of the United States, Title 35 of the United States Code.

2.      Apple is a leading designer and manufacturer of mobile communication devices, personal computers and portable digital media players.  As a result of its significant investment in research and development, Apple has developed innovative technologies that have changed the face of the computing and telecommunications industries for four decades.

3.      Apple's many pioneering and revolutionary products spanning its history include the Macintosh PC (first released in 1984), PowerBook (first released in 1991), Newton (first released in 1993), PowerMac (first released in 1994), iMac (first released in 1998), iPod (first released in 2001), iTunes Store (opened in 2003), MacBook (first released in 2006), iPhone and Apple TV (first released in 2007), Apple App Store (opened in 2008), Siri (first released 2010), iPad (first released in 2010), Apple Watch (first released in 2015), and AirPods (first released in 2016).  These may be the products and platforms that consumers most frequently associate with Apple's consistent innovation, but Apple has also been a pioneer in development of proprietary data and power connector technology, such as its 30-pin data and power connector (first released in 2003) and Lightning® data and power connector (first released in 2012).

4.      The United States Patent & Trademark Office has awarded Apple thousands of patents protecting the technological inventions underlying Apple's groundbreaking products and services, including on Apple's proprietary Lightning® connector technology.  Many well-known functionalities and features of Apple's products were made possible with the inventions of Apple engineers.

5.      Defendants, on the other hand, are patent assertion entities formed for the sole purpose of generating revenue by asserting patents against other companies' products. Defendants' prior actions and statements have created a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of noninfringement as to

DLA Piper LLP (US)
San Diego

WEST\285147622.1

CASE NO. 5:19-CV-638
COMPLAINT FOR DECLARATORY JUDGMENT OF NONINFRINGEMENT

1   whether Apple products practice United States Patent Nos. 6,936,936 ("the '936 patent");

2   7,239,111 ("the '111 patent"); 7,453,233 ("the '233 patent"); 7,812,565 ("the '565 patent");

3   8,193,776 ("the '776 patent"); 8,330,422 ("the '422 patent"); 8,624,550 ("the '550 patent")

4   (collectively "the Adapter Patents") and 7,358,703 ("the '703 patent"); 7,737,657 ("the '657

5   patent"); 7,834,586 ("the '586 patent"); 8,169,187 ("the '187 patent"); and 8,232,766 ("the '766

6   patent") (collectively "the Device Patents") (Apple refers to the Adapter Patents and Device

7   Patents collectively as the "Patents-in-Suit").

8       6.    Defendants have claimed, through letters, claim charts, telephone calls and in-

9   person meetings with Apple personnel in this District, that certain Apple products infringe the

10   Patents-in-Suit and that Apple requires a license to the Patents-in-Suit.  However, Apple's

11   products do not infringe the Patents-in-Suit, as detailed in the allegations below.

12       7.    This Court should not allow the threat of a future lawsuit to harm and cause

13   uncertainty to Apple's business.

14       8.    Therefore, there is and remains a substantial controversy between Apple and

15   Defendants of sufficient immediacy and reality to warrant the issuance of a declaratory judgment

16   of noninfringement.  Therefore, Apple brings this action to obtain a declaratory judgment that

17   Apple's Adapter Products (including the Apple 2.4A Adapter), Lightning Products (including the

18   Apple iPhone 7 Plus and 8 Plus, iPad Pro 4, iPod touch, AirPods, and Beats Pill+ Portable

19   Speaker) and Apple Watch Products (including Apple Watch Series 2 and 3) (collectively "the

20   Accused Products") do not infringe at least the claims of the Patents-in-Suit identified below,

21   directly or indirectly, literally or under the doctrine of equivalents.

22                   **THE PARTIES**

23       9.    Plaintiff Apple is a California corporation having its principal place of business at

24   One Apple Park Way, Cupertino, California 95014.  Apple has over 20,000 employees who work

25   in or near its headquarters in Cupertino, California.

26       10.    On information and belief, Defendant FISI is a company organized and existing

27   under the laws of Delaware with a principal place of business at 2990 Long Prairie Road, Suite B,

28   Flower Mound, Texas 75022.

11.     On information and belief, Defendant FISI Holdings is also a company organized and existing under the laws of Delaware and is the parent company of Defendant FISI.

**JURISDICTION AND VENUE**

12.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action involves claims arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, and under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

13.     Personal jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and/or 1400, because, on information and belief, Defendants have directed and continue to direct acts to this District, including acts pertaining to the Patents-in-Suit.  For example, in connection with Defendants' business, Defendants have targeted and met with companies located in this District, including Apple.  For these reasons and for those stated below, Defendants have, and have had, continuous and systematic contacts within the State of California, including this District, and have purposefully directed business activities into and in this District. In addition, a substantial part of the events giving rise to the claims alleged in this Complaint occurred in this District, and Defendants are subject to personal jurisdiction in this District.

14.     On information and belief, Defendant FISI is a wholly owned subsidiary of Defendant FISI Holdings, and Defendant FISI purports to be the owner of all rights, title and interest in and to the Patents-in-Suit.  Defendants have made statements in this District alleging that Apple's Accused Products infringe the Patents-in-Suit, including through claim charts directed to Apple in this District, and that Apple requires a license to Defendants' patent portfolio, including the Patents-in-Suit (both of which Apple disputes).  Furthermore, on information and belief, Defendants have demonstrated a pattern of conduct with other companies and engage in efforts to monetize their intellectual property.  On information and belief, Defendants have demonstrated on multiple occasions a willingness to file suit through their initiation of multiple lawsuits against companies similarly situated to Apple, including multiple lawsuits involving one or more of the Patents-in-Suit.

/////

15.    This Court has personal jurisdiction over Defendants and venue is proper in this District.  Defendants have purposefully availed themselves of the benefits of California law and have more than sufficient minimum contacts with California, including within this District, such that this declaratory judgment action meets the requirements of California's long-arm statute.

16.    For instance, Apple resides in this District and Defendants have alleged that Apple has committed acts of infringement in this District related to the Patents-in-Suit and the Apple Accused Products.  This District is also the most convenient District for the present declaratory judgment claims because, among other things, witnesses and evidence concerning the Apple Accused Products are located in this District.

17.    As another example, Defendants' representatives have met with Apple in person within this District to discuss Defendants' allegations of infringement pertaining to the Patents-in-Suit and the Apple Accused Products on at least two occasions on or about August 28, 2018 and November 9, 2018.  Furthermore, Defendants have sent a number of letters and claim charts addressed to Apple personnel in this District alleging infringement of the Patents-in-Suit and Apple's alleged need for a license to FISI's patent portfolio, including the Patents-in-Suit.

18.    For these reasons and the reasons set forth below, a substantial controversy exists between the parties which is of sufficient immediacy and reality to warrant declaratory relief.

## INTRADISTRICT ASSIGNMENT

19.    For purposes of intra-district assignment under Civil Local Rules 3-2(c) and 3-5(b), this intellectual property action will be assigned on a district-wide basis.

## FACTUAL BACKGROUND

**A.    Apple Is An Innovator In Data And Power Connector Technology.**

20.    Apple is an innovator in data and power connector technology.  For example, in 2003, Apple released its proprietary 30-pin connector, allowing users to easily connect their iPods (and later iPhones and iPads) to a multitude of other devices for both power and data transfer purposes.  *See* iPod (with Dock Connector) – User Guide, available at https://support.apple.com/en_US/manuals/ipod:

/////

1
2
3
4
5
6
7
8
9
10
11
12



13    21.    In 2012, Apple yet again innovated in the data and power connector technology

14  space with the release of its proprietary 8-pin digital Lightning® connector that succeeded the 30-

15  pin connector.  The Lightning® connector is 80 percent smaller than the 30-pin connector, is

16  more durable, with an adaptive interface, and can be inserted into the Apple device with either

17  side of the connector facing up—increasing ease of use for the user.  *See* Apple Special Event,

18  September 12, 2012, available at https://itunes.apple.com/us/podcast/apple-keynotes-

19  1080p/id509310064?mt=2#:

20
21
22
23
24
25
26
27
28

**B.**     **FISI Has Aggressively Licensed And Litigated Its Patents.**

22.     FISI has an extensive history of litigating its patents, including the Patents-in-Suit. On information and belief, since 2016, FISI has asserted 10 patents in at least four patent infringement suits, including several of the Patents-in-Suit.  FISI has kept Apple regularly updated as to the status of FISI's litigation and settlement efforts with the defendants in these other lawsuits.

23.     On information and belief, in 2016, FISI asserted patents in litigation against LG Electronics, Inc., LG Electronics U.S.A., Inc., LG Electronics MobileComm U.S.A. Inc., LG Electronics Mobile Research U.S.A. LLC, and LG Electronics Alabama, Inc.  FISI's complaint included infringement allegations regarding the '111, '550, '586, and '766 patents.

24.     On information and belief, in 2016, FISI asserted patents in litigation against Huawei Investment & Holding Co., Ltd., Huawei Technologies Co., Ltd., Huawei Device USA, Inc., and Futurewei Technologies, Inc.  FISI's complaint included infringement allegations regarding the '111, '550, '586, and '766 patents.

25.     On information and belief, in 2017, FISI asserted patents in litigation against ZTE Corporation, ZTE (USA), Inc., and ZTE (TX), Inc.  FISI's complaint included infringement allegations regarding the '111, '550, '586, and '766 patents.

26.     On information and belief, in 2017, FISI asserted patents in litigation against Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.  FISI's complaint included infringement allegations regarding the '936, '111, '550, '586, and '766 patents.

27.     On information and belief, FISI's history of asserting patents in litigation against companies with competitive product offerings to Apple establishes a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Apple's Accused Products practice the Patents-in-Suit.  Moreover, FISI's direct allegations that Apple's Accused Products practice the Patents-in-Suit and that Apple allegedly requires a license to the Patents-in-Suit establishes a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of noninfringement.

/////

**THE PATENTS-IN-SUIT**

28. On August 30, 2005, the United States Patent and Trademark Office (the "Patent Office") issued the '936 patent, entitled "Multifunctional charger system and method" to Daniel M. Fischer, Dan G. Radut, Michael F. Habicher, Quang A. Luong, and Jonathan T. Malton. A true and correct copy of the '936 patent is attached to this Complaint as Exhibit 1. On information and belief, FISI purports to own by assignment the '936 patent.

29. On July 3, 2007, the Patent Office issued the '111 patent, entitled "Universal serial bus adapter for a mobile device" to Daniel M. Fischer, Dan G. Radut, Michael F. Habicher, Quang A. Luong, and Jonathan T. Malton. A true and correct copy of the '111 patent is attached to this Complaint as Exhibit 2. On information and belief, FISI purports to own by assignment the '111 patent.

30. On April 15, 2008, the Patent Office issued the '703 patent, entitled "Universal serial bus charger for a mobile device" to Dusan Veselic. A true and correct copy of the '703 patent is attached to this Complaint as Exhibit 3. On information and belief, FISI purports to own by assignment the '703 patent.

31. On November 18, 2008, the Patent Office issued the '233 patent, entitled "Adapter system and method for powering a device" to Daniel M. Fischer, Dan G. Radut, Michael F. Habicher, Quang A. Luong, and Jonathan T. Malton. A true and correct copy of the '233 patent is attached to this Complaint as Exhibit 4. On information and belief, FISI purports to own by assignment the '233 patent.

32. On June 15, 2010, the Patent Office issued the '657 patent, entitled "System and method for charging a battery in a mobile device" to Daniel M. Fischer, Dan G. Radut, Michael F. Habicher, Quang A. Luong, and Jonathan T. Malton. A true and correct copy of the '657 patent is attached to this Complaint as Exhibit 5. On information and belief, FISI purports to own by assignment the '657 patent.

33. On October 12, 2010, the Patent Office issued the '565 patent, entitled "Charger system and method" to Ryan M. Bayne, Skarine Alexei, and Steve Green. A true and correct

/////

1    copy of the '565 patent is attached to this Complaint as Exhibit 6.  On information and belief,

2    FISI purports to own by assignment the '565 patent.

3         34.    On November 16, 2010, the Patent Office issued the '586 patent, entitled

4    "Multifunctional charger system and method" to Daniel M. Fischer, Dan G. Radut, Michael F.

5    Habicher, Quang A. Luong, and Jonathan T. Malton.  A true and correct copy of the '586 patent

6    is attached to this Complaint as Exhibit 7.  On information and belief, FISI purports to own by

7    assignment the '586 patent.

8         35.    On May 1, 2012, the Patent Office issued the '187 patent, entitled "Multifunctional

9    charger system and method" to Daniel M. Fischer, Dan G. Radut, Michael F. Habicher, Quang A.

10   Luong, and Jonathan T. Malton.  A true and correct copy of the '187 patent is attached to this

11   Complaint as Exhibit 8.  On information and belief, FISI purports to own by assignment the '187

12   patent.

13        36.    On June 5, 2012, the Patent Office issued the '776 patent, entitled "Charger system

14   and method" to Ryan M. Bayne, Skarine Alexei, and Steven R. Green.  A true and correct copy of

15   the '776 patent is attached to this Complaint as Exhibit 9.  On information and belief, FISI

16   purports to own by assignment the '776 patent.

17        37.    On July 31, 2012, the Patent Office issued the '766 patent, entitled

18   "Multifunctional charger system and method" to Daniel M. Fischer, Dan G. Radut, Michael F.

19   Habicher, Quang A. Luong, and Jonathan T. Malton.  A true and correct copy of the '766 patent

20   is attached to this Complaint as Exhibit 10.  On information and belief, FISI purports to own by

21   assignment the '766 patent.

22        38.    On December 11, 2012, the Patent Office issued the '422 patent, entitled "Charger

23   system and method" to Ryan M. Bayne, Alexei Skarine, and Steven R. Green.  A true and correct

24   copy of the '422 patent is attached to this Complaint as Exhibit 11.  On information and belief,

25   FISI purports to own by assignment the '422 patent.

26        39.    On January 7, 2014, the Patent Office issued the '550 patent, entitled

27   "Multifunctional charger system and method" to Daniel M. Fischer, Dan G. Radut, Michael F.

28   Habicher, Quang A. Luong, and Jonathan T. Malton.  A true and correct copy of the '550 patent

1    is attached to this Complaint as Exhibit 12. On information and belief, FISI purports to own by

2    assignment the '550 patent.

3                                    **COUNT ONE**

4                    **Noninfringement of United States Patent No. 6,936,936**

5          40.    Apple incorporates by reference the preceding allegations of its Complaint.

6          41.    Apple has not infringed and does not infringe at least claims 18 and 51 of the '936

7    patent, either directly or indirectly, literally or under the doctrine of equivalents, including

8    through its making, use, sale or offer for sale in, or importation into the United States of the

9    Apple Adapter Products, such as the Apple 2.4A Adapter.

10         42.    The claims of the '936 patent are directed to a Universal Serial Bus ("USB")

11   Specification Revision 2.0 ("USB 2.0") adapter providing an identification signal on one or more

12   data lines of a primary USB 2.0 connector. *See, e.g.,* '936 patent at 12:44-60, 15:38-55. In

13   contrast, the Apple Adapter Products do not comprise a USB 2.0 adapter with data lines of a USB

14   2.0 connector, do not communicate using USB 2.0 compliant protocols, and do not transfer data.

15   The Apple Adapter Products do not include a USB connector and circuitry compliant with USB

16   2.0 protocols and specifications; consequently, the connector does not include data lines capable

17   of transferring data within the meaning of USB 2.0.

18         43.    The claims of the '936 patent further require that the identification signal

19   comprises a voltage level on at least one of the data lines in the primary USB connector. *See,*

20   *e.g., id.* at 13:14-16. In contrast, the Apple Adapter Products do not comprise a connector with

21   USB 2.0 data lines because the Apple Adapter Products are not capable of data transfer within the

22   meaning of USB 2.0 protocols and specifications.

23         44.    The claims of the '936 patent also require that the identification signal, via the

24   identification subsystem and the USB connector, inform the mobile device that the USB adapter

25   is not limited by power limits imposed by the USB specification. *See, e.g., id.* at 15:51-55. In

26   contrast, as explained above, the Apple Adapter Products do not include the claimed

27   identification system at least because they lack data lines and are not capable of data transfer

28   within the meaning of USB 2.0 protocols and specifications.

45.     Accordingly, at least for the above reasons, the Apple Adapter Products do not infringe at least claims 18 and 51 of the '936 patent, either literally or under the doctrine of equivalents.

46.     Apple also does not induce infringement of the '936 patent or otherwise indirectly infringe the '936 patent for at least the reasons stated above and because there is no direct infringement of the '936 patent, either literally or under the doctrine of equivalents.

47.     As set forth above, an actual controversy exists between Apple and Defendants with respect to alleged infringement of the '936 patent, and this controversy is likely to continue. Accordingly, Apple desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '936 patent.

48.     A judicial declaration is necessary and appropriate so that Apple may ascertain its rights regarding the claims of the '936 patent.

**COUNT TWO**

**Noninfringement of United States Patent No. 7,239,111**

49.     Apple incorporates by reference the preceding allegations of its Complaint.

50.     Apple has not infringed and does not infringe at least claims 8 and 17 of the '111 patent, either directly or indirectly, literally or under the doctrine of equivalents, including through its making, use, sale or offer for sale in, or importation into the United States of the Apple Adapter Products, such as the Apple 2.4A Adapter.

51.     The claims of the '111 patent are directed to a USB 2.0 adapter for providing power to a mobile device through a USB 2.0 port.  *See, e.g.*, '111 patent at 11:60-61, 13:1-3.  In contrast, the Apple Adapter Products do not comply with USB 2.0 protocols, but rather provide power to Apple Lightening Products over a proprietary port, *e.g.,* a Lightning® port.  In addition, the claims of the '111 patent are directed to a USB 2.0 adapter that generates an identification signal that is configured to indicate to a mobile device that a power socket is not a USB host or hub.  *See, e.g.*, '111 patent at 11:60-61, 12:2-4; 13:1-3, 7-9.  In contrast, the Apple Adapter Products are not USB 2.0 adapters because they do not comply with USB 2.0 protocols and

/////

specifications, and they do not generate an identification signal configured to indicate that a power socket is not a USB 2.0 hub or host.

52.     Furthermore, the claims of the '111 patent are directed to a USB 2.0 connector. *See, e.g., id.* at 12:5-8, 13:12-13.  Claim 17 of the '111 patent further requires a USB 2.0 connector with data pins. *See id.* at 13:10-11.  In contrast, the Apple Adapter Products do not include a USB connector and circuitry compliant with USB 2.0 protocols and specifications; consequently, the connector does not include pins capable of transferring data within the meaning of USB 2.0.

53.     Claim 8 of the '111 patent requires a USB controller. *See id.* at 12:33-36.  In contrast, the Apple Adapter Products do not include a USB controller at least because the Apple Adapter Products are not configured to transfer data.

54.     Accordingly, at least for the reasons recited above, the Apple Adapter Products do not infringe at least claims 8 and 17 of the '111 patent, either literally or under the doctrine of equivalents.

55.     Apple also does not induce infringement of the '111 patent or otherwise indirectly infringe the '111 patent for at least the reasons stated above and because there is no direct infringement of the '111 patent, either literally or under the doctrine of equivalents.

56.     As set forth above, an actual controversy exists between Apple and Defendants with respect to alleged infringement of the '111 patent, and this controversy is likely to continue. Accordingly, Apple desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '111 patent.

57.     A judicial declaration is necessary and appropriate so that Apple may ascertain its rights regarding the claims of the '111 patent.

## **COUNT THREE**

### **Noninfringement of United States Patent No. 7,358,703**

58.     Apple incorporates by reference the preceding allegations of its Complaint.

59.     Apple has not infringed and does not infringe at least claim 13 of the '703 patent, either directly or indirectly, literally or under the doctrine of equivalents, including through its

-12-

1    making, use, sale or offer for sale in, or importation into the United States of the Apple Lightning

2    Products that may connect to an Apple adapter, such as the Apple iPad Pro 4 and iPhone 7 Plus

3    products.

4         60.    The claims of the '703 patent are directed to a mobile device with a USB port on

5    the device. *See, e.g.*, '703 patent at 8:21-25.  In contrast, the Apple Lightning Products include

6    proprietary connectors, *e.g.,* the Lightning® connectors, which do not comprise a USB port.  The

7    claims also require determination of both a regulated voltage value and a maximum current value

8    for the external device from waveform characteristics of a charger configuration signal.  *See, e.g.*,

9    *id*. at 8:27-29.  In contrast, the Apple Lightning Products do not determine such values based on

10   waveform characteristics of such a signal.

11        61.    Accordingly, at least for the reasons recited above, the Apple Lightning Products

12   do not infringe at least claim 13 of the '703 patent, either literally or under the doctrine of

13   equivalents.

14        62.    Apple also does not induce infringement of the '703 patent or otherwise indirectly

15   infringe the '703 patent for at least the reasons stated above and because there is no direct

16   infringement of the '703 patent, either literally or under the doctrine of equivalents.

17        63.    As set forth above, an actual controversy exists between Apple and Defendants

18   with respect to alleged infringement of the '703 patent, and this controversy is likely to continue.

19   Accordingly, Apple desires a judicial determination and declaration of the respective rights and

20   duties of the parties with respect to the '703 patent.

21        64.    A judicial declaration is necessary and appropriate so that Apple may ascertain its

22   rights regarding the claims of the '703 patent.

23                              **COUNT FOUR**

24              **Noninfringement of United States Patent No. 7,453,233**

25        65.    Apple incorporates by reference the preceding allegations of its Complaint.

26        66.    Apple has not infringed and does not infringe at least claims 6 and 15 of the '233

27   patent, either directly or indirectly, literally or under the doctrine of equivalents, including

28   /////

through its making, use, sale or offer for sale in, or importation into the United States of the Apple Adapter Products, such as the Apple 2.4A Adapter.

67.     The claims of the '233 patent are directed to a USB 2.0 adapter for providing power through a USB 2.0 connector configured to send substantial energy through the USB 2.0 connector before completing device enumeration. *See, e.g.,* '233 patent at 11:36-39, 48-50; 12:39-42, 47-49.  In contrast, the Apple Adapter Products do not comprise a USB 2.0 adapter for providing power through a USB 2.0 connector, and do not participate in device enumeration.

68.     Claim 6 of the '233 patent also requires an identification signal on at least one data line in the USB 2.0 connector. *See, e.g.*, *id.* at 12:5-7.  In contrast, the Apple Adapter Products do not comprise a USB 2.0 connector with data lines for USB 2.0 compliant protocols.  The Apple Adapter Products do not include a USB connector and circuitry compliant with USB 2.0 protocols and specifications; consequently, the connector does not include data lines capable of transferring data within the meaning of USB. 2.0.

69.     Accordingly, at least for the reasons recited above, the Apple Adapter Products do not infringe at least claims 6 and 15 of the '233 patent, either literally or under the doctrine of equivalents.

70.     Apple also does not induce infringement of the '233 patent or otherwise indirectly infringe the '233 patent for at least the reasons stated above and because there is no direct infringement of the '233 patent, either literally or under the doctrine of equivalents.

71.     As set forth above, an actual controversy exists between Apple and Defendants with respect to alleged infringement of the '233 patent, and this controversy is likely to continue. Accordingly, Apple desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '233 patent.

72.     A judicial declaration is necessary and appropriate so that Apple may ascertain its rights regarding the claims of the '233 patent.

## **COUNT FIVE**

### **Noninfringement of United States Patent No. 7,737,657**

73.     Apple incorporates by reference the preceding allegations of its Complaint.

-14-

74.     Apple has not infringed and does not infringe at least claim 2 of the '657 patent, either directly or indirectly, literally or under the doctrine of equivalents, including through its making, use, sale or offer for sale in, or importation into the United States of the Apple Lightning Products that may connect to an Apple adapter, such as the Apple Beats Pill+ Portable Speaker, iPod touch, iPad Pro 4 and iPhone 7 Plus and 8 Plus products.

75.     Claim 2 of the '657 patent is directed to a mobile device with a USB 2.0 interface configured to allow reception of a USB 2.0 cable. *See, e.g.*, '657 patent at 11:35-38.  In contrast, Apple Lightning Products include proprietary connectors, *e.g.,* the Lightning® connector, which do not comprise a USB 2.0 interface that allows reception of a USB 2.0 cable.  Claim 2 also requires that a charging system be operably connected to the USB 2.0 interface. *See, e.g., id.* at 11:39-40.  In contrast, the Apple Lightning Products charge through a proprietary interface, not a USB 2.0 interface.  Additionally, claim 2 requires the mobile device to refrain from transmitting over the data lines from the USB 2.0 interface. *See, e.g., id.* at 11:47-48.  In contrast, the Apple Lightning Products do not include a USB 2.0 interface and do not refrain from transmitting over data line(s) of their proprietary connectors.  Claim 2 also requires D+ and D- lines of a USB 2.0 interface, where D+ and D- signals arriving at the USB interface, if any, are not responded to.  In contrast, the Apple Lightning Products do not include a USB 2.0 interface and do respond to signals arriving on data line(s) of their proprietary connectors.

76.     Accordingly, at least for the reasons recited above, the Apple Lightning Products do not infringe at least claim 2 of the '657 patent, either literally or under the doctrine of equivalents.

77.     Apple also does not induce infringement of the '657 patent or otherwise indirectly infringe the '657 patent for at least the reasons stated above and because there is no direct infringement of the '657 patent, either literally or under the doctrine of equivalents.

78.     As set forth above, an actual controversy exists between Apple and Defendants with respect to alleged infringement of the '657 patent, and this controversy is likely to continue. Accordingly, Apple desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '657 patent.

79.     A judicial declaration is necessary and appropriate so that Apple may ascertain its rights regarding the claims of the '657 patent.

**COUNT SIX**

**Noninfringement of United States Patent No. 7,812,565**

80.     Apple incorporates by reference the preceding allegations of its Complaint.

81.     Apple has not infringed and does not infringe at least claims 1 and 5 of the '565 patent, either directly or indirectly, literally or under the doctrine of equivalents, including through its making, use, sale or offer for sale in, or importation into the United States of the Apple Adapter Products, such as the Apple 2.4A Adapter.

82.     The claims of the '565 patent are directed to a charger providing power through a USB 2.0 connector with data lines. *See, e.g.*, '565 patent at 11:52-53; 12:8-10.  In contrast, the Apple Adapter Products do not comprise a USB 2.0 connector with data lines, do not communicate using USB 2.0 compliant protocols, and do not transfer data within the meaning of the USB 2.0 protocols and specifications.  The Apple Adapter Products do not include a USB 2.0 connector and circuitry compliant with USB 2.0 protocols and specifications; consequently, the connector does not include data lines capable of transferring data within the meaning of USB 2.0.

83.     Claim 1 of the '565 patent also requires a charging controller configured to control an amount of power provided at the USB 2.0 connector, and configured to generate an identification signal on the USB 2.0 connector's two data lines. *See, e.g., id.* at 11:59-60.  In contrast, the Apple Adapter Products do not have the claimed charging controller at least because they lack a USB 2.0 connector, and at least because no such controller generates an identification signal on a USB 2.0 connector's two data lines.  In addition, the claims require generation of the identification signal on the USB 2.0 connector's two data lines, usable to indicate the charger is not subject to standard USB 2.0 power limitations and provided through the use of a resistance between D+ and D- data lines. *See, e.g., id.* at 11:62-65; 12:17-21.  In contrast, as explained above, the Apple Adapter Products do not generate the claimed identification signal at least because they lack data lines and also because no such identification signal is provided through the use of a resistance between D+ and D- lines.

84.     Accordingly, at least for the reasons recited above, the Apple Adapter Products do not infringe at least claims 1 and 5 of the '565 patent, either literally or under the doctrine of equivalents.

85.     Apple also does not induce infringement of the '565 patent or otherwise indirectly infringe the '565 patent for at least the reasons stated above and because there is no direct infringement of the '565 patent, either literally or under the doctrine of equivalents.

86.     As set forth above, an actual controversy exists between Apple and Defendants with respect to alleged infringement of the '565 patent, and this controversy is likely to continue. Accordingly, Apple desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '565 patent.

87.     A judicial declaration is necessary and appropriate so that Apple may ascertain its rights regarding the claims of the '565 patent.

## COUNT SEVEN

## Noninfringement of United States Patent No. 7,834,586

88.     Apple incorporates by reference the preceding allegations of its Complaint.

89.     Apple has not infringed and does not infringe at least claims 2, 6, 9, and 12 of the '586 patent, either directly or indirectly, literally or under the doctrine of equivalents, including through its making, use, sale or offer for sale in, or importation into the United States of the Apple Lightning Products that may connect to an Apple adapter, such as the Apple Beats Pill+ Portable Speaker, iPod touch, iPad Pro 4 and iPhone 7 Plus and 8 Plus products.

90.     The claims of the '586 patent are directed to a mobile device with a USB 2.0 interface configured to allow reception of a USB 2.0 cable.  *See, e.g.*, '586 patent at 11:51-52.  In contrast, the Apple Lightning Products include proprietary connectors, *e.g.*, the Lightning® connector, which do not comprise a USB interface that allows reception of a USB cable.  The claims further require that a charging system be operably connected to the USB 2.0 interface. *See, e.g.*, *id.* at 11:53-54.  In contrast, the Apple Lightning Products charge through a proprietary interface, not a USB interface.  Additionally, the claims require an identification signal comprising a voltage level applied to at least one data line in the USB connector.  *See, e.g.*, *id.* at

-17-

11:65-67.  In contrast, the Apple Lightning Products do not include a USB connector at least for the reason that the Apple Lightning Products use proprietary connectors and communication protocols that differ from those specified by USB 2.0 protocols and specifications.

91.     Accordingly, at least for the reasons recited above, the Apple Lightning Products do not infringe at least claims 2, 6, 9, and 12 of the '586 patent, either literally or under the doctrine of equivalents.

92.     Apple also does not induce infringement of the '586 patent or otherwise indirectly infringe the '586 patent for at least the reasons stated above and because there is no direct infringement of the '586 patent, either literally or under the doctrine of equivalents.

93.     As set forth above, an actual controversy exists between Apple and Defendants with respect to alleged infringement of the '586 patent, and this controversy is likely to continue. Accordingly, Apple desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '586 patent.

94.     A judicial declaration is necessary and appropriate so that Apple may ascertain its rights regarding the claims of the '586 patent.

## COUNT EIGHT

### Noninfringement of United States Patent No. 8,169,187

95.     Apple incorporates by reference the preceding allegations of its Complaint.

96.     Apple has not infringed and does not infringe at least claims 6 and 15 of the '187 patent, either directly or indirectly, literally or under the doctrine of equivalents, including through its making, use, sale or offer for sale in, or importation into the United States of the Apple Lightning Products and Apple Watch Products that may connect to an Apple adapter, such as the Apple Beats Pill+ Portable Speaker, iPod touch, iPad Pro 4, iPhone 7 Plus and 8 Plus, AirPods, and Apple Watch Series 2 and Series 3.

97.     The claims of the '187 patent are directed to a mobile communication device with a USB 2.0 communication path.  *See, e.g.*, '187 patent at 12:7-8; 12:31-32.  In contrast, the Apple Lightning Products and Apple Watch Products include proprietary connectors, *e.g.,* the Lightning® connector or magnetic charger, which do not comprise a USB 2.0 communication

WEST\285147622.1

path.  The claims also require an abnormal data line condition on D+ and D- lines of a USB 2.0 communication path.  *See, e.g. id.* at 12:21-23; 12:45-47.  In contrast, the Apple Lightning Products and Apple Watch Products do not include a USB 2.0 communication path with D+ and D- lines.

98.     Accordingly, at least for the reasons recited above, the Apple Lightning Products and Apple Watch Products do not infringe at least claims 6 and 15 of the '187 patent, either literally or under the doctrine of equivalents.

99.     Apple also does not induce infringement of the '187 patent or otherwise indirectly infringe the '187 patent for at least the reasons stated above and because there is no direct infringement of the '187 patent, either literally or under the doctrine of equivalents.

100.    As set forth above, an actual controversy exists between Apple and Defendants with respect to alleged infringement of the '187 patent and this controversy is likely to continue.  Accordingly, Apple desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '187 patent.

101.    A judicial declaration is necessary and appropriate so that Apple may ascertain its rights regarding the claims of the '187 patent.

## COUNT NINE

### Noninfringement of United States Patent No. 8,193,776

102.    Apple incorporates by reference the preceding allegations of its Complaint.

103.    Apple has not infringed and does not infringe at least claims 15 and 17 of the '776 patent, either directly or indirectly, literally or under the doctrine of equivalents, including through its making, use, sale or offer for sale in, or importation into the United States of the Apple Adapter Products, such as the Apple 2.4A Adapter.

104.    The claims of the '776 patent are directed to a charger having a USB 2.0 connector with data lines.  *See, e.g.*, '776 patent at 13:3-5, 14:1.  In contrast, the Apple Adapter Products do not comprise a USB 2.0 connector with data lines, do not communicate using USB 2.0 compliant protocols and do not transfer data within the meaning of USB 2.0.  The Apple Adapter Products do not include a USB 2.0 connector and circuitry compliant with USB 2.0 protocols and

specifications; consequently, the connector does not include data lines capable of transferring data within the meaning of USB 2.0.

105.    The claims of the '776 patent also require an identification signal on the two data lines usable to indicate the charger is not subject to standard USB 2.0 power limitations. *See, e.g.*, *id.* at 14:1-3.  In contrast, the Apple Adapter Products do not provide the claimed identification signal at least because they lack data lines and are not capable of data transfer within the meaning of USB 2.0 protocols and specifications.

106.    In addition, claim 17 of the '776 patent requires the data lines to use a resistance while being pulled into a high state. *See, e.g. id.* at 14:6-7.  In contrast, the Apple Adapter Products do not use USB 2.0 data lines and do not have such data lines using the claimed resistance while being pulled into a high state.

107.    Accordingly, at least for the reasons recited above, the Apple Adapter Products do not infringe at least claims 15 and 17 of the '776 patent, either literally or under the doctrine of equivalents.

108.    Apple also does not induce infringement of the '776 patent or otherwise indirectly infringe the '776 patent for at least the reasons stated above and because there is no direct infringement of the '776 patent, either literally or under the doctrine of equivalents.

109.    As set forth above, an actual controversy exists between Apple and Defendants with respect to alleged infringement of the '776 patent, and this controversy is likely to continue. Accordingly, Apple desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '776 patent.

110.    A judicial declaration is necessary and appropriate so that Apple may ascertain its rights regarding the claims of the '776 patent.

## **COUNT TEN**

### **Noninfringement of United States Patent No. 8,232,766**

111.    Apple incorporates by reference the preceding allegations of its Complaint.

112.    Apple has not infringed and does not infringe at least claims 5 and 13 of the '766 patent, either directly or indirectly, literally or under the doctrine of equivalents, including

-20-

1  through its making, use, sale or offer for sale in, or importation into the United States of the

2  Apple Lightning Products and Apple Watch Products that may connect to an Apple adapter, such

3  as the Apple Beats Pill+ Portable Speaker, iPod touch, iPad Pro 4, iPhone 7 Plus and 8 Plus,

4  AirPods, and Apple Watch Series 2 and Series 3.

5       113.    The claims of the '766 patent are directed to a mobile device with a USB 2.0

6  communication path. *See, e.g.*, '766 patent at 12:15-16; 12:40-41. In contrast, the Apple

7  Lightning Products include proprietary connectors, *e.g.,* the Lightning® connector, which does

8  not comprise a USB 2.0 communication path because it does not comply with USB 2.0 protocols

9  and specifications. The Apple Watch Products do not include a USB 2.0 communication path or

10  another connector; rather, the Apple Watch Products rely on wireless communication protocols

11  and wireless charging. Additionally, the claims require an abnormal USB 2.0 data condition on

12  D+ and D- lines of a USB 2.0 communication path. *See, e.g. id*. at 12:30-32; 12:57-59. In

13  contrast, the Apple Lightning Products and Apple Watch Products do not include a USB 2.0

14  communication path with D+ and D- lines.

15       114.    Accordingly, at least for the reasons recited above, the Apple Lightning Products

16  and Apple Watch Products do not infringe at least claims 5 and 13 of the '766 patent, either

17  literally or under the doctrine of equivalents.

18       115.    Apple also does not induce infringement of the '766 patent or otherwise indirectly

19  infringe the '766 patent for at least the reasons stated above and because there is no direct

20  infringement of the '766 patent, either literally or under the doctrine of equivalents.

21       116.    As set forth above, an actual controversy exists between Apple and Defendants

22  with respect to alleged infringement of the '766 patent, and this controversy is likely to continue.

23  Accordingly, Apple desires a judicial determination and declaration of the respective rights and

24  duties of the parties with respect to the '766 patent.

25       117.    A judicial declaration is necessary and appropriate so that Apple may ascertain its

26  rights regarding the claims of the '766 patent.

27  /////

28  /////

## COUNT ELEVEN

### Noninfringement of United States Patent No. 8,330,422

118.    Apple incorporates by reference the preceding allegations of its Complaint.

119.    Apple has not infringed and does not infringe at least claims 1, 6, and 11 of the '422 patent, either directly or indirectly, literally or under the doctrine of equivalents, including through its making, use, sale or offer for sale in, or importation into the United States of the Apple Adapter Products, such as the Apple 2.4A Adapter.

120.    The claims of the '422 patent are directed to charging through a USB 2.0 interface or connector with data lines. *See, e.g.,* '422 patent Reexamination Certificate at 1:24-26, 32; 1:44-46; 1:62-65.  In contrast, the Apple Adapter Products do not comprise a USB 2.0 connector with data lines, do not communicate using USB 2.0 compliant protocols, and do not transfer data within the meaning of USB 2.0.  The Apple Adapter Products do not include a USB 2.0 connector and circuitry compliant with USB 2.0 protocols and specifications; consequently, the connector does not include data lines capable of transferring data within the meaning of USB 2.0.

121.    Claim 1 of the '422 patent also requires a charging controller configured to control an amount of power output from the charger and to communicate an identification signal via the USB 2.0 interface's data lines. *See, e.g., id.* at 1:29-32.  In contrast, the Apple Adapter Products do not have the claimed charging controller at least because they lack a USB 2.0 interface, and at least because no such controller generates an identification signal on a USB 2.0 interface's data lines.  In addition, the claims require generation of the identification signal on USB 2.0 D+ and D- data lines, indicating the power output exceeds standard USB 2.0 power limits. *See, e.g., id.* at 1:35-39; 1:52-59; 2:5-7.  In contrast, the Apple Adapter Products do not generate the claimed identification signal at least because they lack data lines, and because no such identification signal is provided to indicate the power output exceeds standard USB 2.0 power limits.

122.    Claims 1 and 6 of the '422 patent also require provision of the identification signal based on a resistance between the D+ and D- data lines. *See, e.g., id.* at 1:35-39; 1:52-59.  In contrast, the Apple Adapter Products do not generate the claimed identification signal at least

/////

WEST\285147622.1

1    because they do not provide such a signal through the use of a resistance between USB 2.0 D+

2    and D- lines.

3        123.    Accordingly, at least for the reasons recited above, the Apple Adapter Products do

4    not infringe at least claims 1, 6 and 11 of the '422 patent, either literally or under the doctrine of

5    equivalents.

6        124.    Apple also does not induce infringement of the '422 patent or otherwise indirectly

7    infringe the '422 patent for at least the reasons stated above and because there is no direct

8    infringement of the '422 patent, either literally or under the doctrine of equivalents.

9        125.    As set forth above, an actual controversy exists between Apple and Defendants

10   with respect to alleged infringement of the '422 patent, and this controversy is likely to continue.

11   Accordingly, Apple desires a judicial determination and declaration of the respective rights and

12   duties of the parties with respect to the '422 patent.

13       126.    A judicial declaration is necessary and appropriate so that Apple may ascertain its

14   rights regarding the claims of the '422 patent.

15                              **COUNT TWELVE**

16           **Noninfringement of United States Patent No. 8,624,550**

17       127.    Apple incorporates by reference the preceding allegations of its Complaint.

18       128.    Apple has not infringed and does not infringe at least claims 4 and 13 of the '550

19   patent, either directly or indirectly, literally or under the doctrine of equivalents, including

20   through its making, use, sale or offer for sale in, or importation into the United States of the

21   Apple Adapter Products, such as the Apple 2.4A Adapter.

22       129.    The claims of the '550 patent are directed to an adapter comprising a USB

23   communication path.  *See, e.g.*, '550 patent at 12:8-10.  In contrast, the Apple Adapter Products

24   do not communicate using USB compliant protocols.  The Apple Adapter Products do not include

25   circuitry complaint with USB 2.0 protocols and specifications; consequently, these products do

26   not include data lines capable of transferring data within the meaning of USB 2.0.  Thus, the

27   Apple Adapter Products do not comprise a "USB communication path."  Additionally, the claims

28   require that current is supplied in response to an abnormal data condition on said USB

1    communication path.  *See, e.g.*, *id.* at 12:17-19.  In contrast, the Apple Adapter Products do not

2    supply current in response to a condition on the USB communication path for several reasons.  As

3    alleged above, the Apple Adapter Products lack a USB communication path.  Also, the Apple

4    Adapter Products supply current irrespective of a condition associated with a USB connector.

5        130.    Accordingly, at least for the reasons recited above, the Apple Adapter Products do

6    not infringe at least claims 4 and 13 of the '550 patent, either literally or under the doctrine of

7    equivalents.

8        131.    Apple also does not induce infringement of the '550 patent or otherwise indirectly

9    infringe the '550 patent for at least the reasons stated above and because there is no direct

10   infringement of the '550 patent, either literally or under the doctrine of equivalents.

11       132.    As set forth above, an actual controversy exists between Apple and Defendants

12   with respect to alleged infringement of the '550 patent, and this controversy is likely to continue.

13   Accordingly, Apple desires a judicial determination and declaration of the respective rights and

14   duties of the parties with respect to the '550 patent.

15       133.    A judicial declaration is necessary and appropriate so that Apple may ascertain its

16   rights regarding the claims of the '550 patent.

17   **PRAYER FOR RELIEF**

18       WHEREFORE, Apple respectfully requests that judgment be entered:

19       A.    Declaring that Apple does not infringe at least the identified claims of the Patents-

20   in-Suit, directly or indirectly, literally or under the doctrine of equivalents, by the making, using,

21   selling, offering to sell, and/or importing of the Apple Accused Products;

22       B.    Awarding Apple its reasonable attorneys' fees under 35 U.S.C. § 285; and

23       C.    Awarding any other remedy or relief to which Apple may be entitled and which is

24   deemed appropriate by the Court.

25   /////

26   /////

27   /////

28   /////

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **<u>DEMAND FOR JURY TRIAL</u>**

Apple demands trial by jury of all issues triable of right by a jury.

Dated:  February 5, 2019

DLA PIPER LLP (US)


By  */s/Sean C. Cunningham*
SEAN C. CUNNINGHAM
ERIN GIBSON
EDWARD SIKORSKI
JAKE ZOLOTOREV
ERIK FUEHRER
JACOB D. ANDERSON
PETER MAGGIORE

Attorneys for Plaintiff
APPLE INC.