IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>FUNDAMENTAL INNOVATION SYSTEMS INTERNATIONAL LLC, a Delaware limited liability company; and FUNDAMENTAL INNOVATION SYSTEMS INTERNATIONAL HOLDINGS LLC, a Delaware limited liability company,<br><br>    Defendants.<br>———————————————————/ | No. C 19-00638 WHA<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR TRANSFER AND ORDER TO SHOW CAUSE** |

**INTRODUCTION**

In this action for declaratory judgment of patent noninfringement, defendants move to dismiss the complaint or transfer the action. For the following reasons, defendants' motion to dismiss is **DENIED** and defendants' motion to transfer is **DENIED**. Both parties are also ordered to **SHOW CAUSE**.

**STATEMENT**

Plaintiff Apple Inc. brought this action for declaratory judgment of noninfringement as to whether Apple products practiced a set of twelve patents owned by defendants Fundamental Innovation Systems International LLC and its parent company, Fundamental Innovation Systems International Holdings LLC. Apple, a California corporation with its principal place

1 of business in Cupertino, is a leading designer and manufacturer of mobile communication
2 devices, personal computers, and portable digital media players. Apple seeks a judgment that
3 several of its adapter products, watch products, and products that incorporate its proprietary
4 Lightning connector technology (including the iPhone, iPad, iPod touch, and Airpods) do not
5 infringe Fundamental's patents (Compl. ¶¶ 1–11).*

Fundamental, a Delaware corporation with its principal place of business in Flower Mound, Texas, is a patent assertion entity that makes money by asserting patents against other companies' products. Fundamental has asserted several of the twelve patents in suit against Apple's competitors, including LG Electronics, Huawei Technologies, ZTE, and Samsung Electronics. Fundamental has informed Apple, through letters, claim charts, telephone calls, and in-person meetings with Apple employees, that Apple products infringe Fundamental's patents and that a license is required. Apple brings this declaratory judgment with twelve counts of noninfringement, one for each identified patent (Compl. ¶¶ 10–18, 22–28).

Since Apple has filed its complaint, Fundamental has filed an infringement action in the Eastern District of Texas asserting five of the patents identified in this declaratory action. *See Fundamental Innovation Sys. Int'l LLC v. Apple, Inc.*, No. 2:19-cv-00048 (E.D. Tex. Feb. 11, 2019). Fundamental now moves to dismiss all claims or transfer the action to United States District Court for the Eastern District of Texas. Fundamental asserts that all claims should be dismissed for lack of personal jurisdiction. In the alternative, Fundamental asserts that all claims should be dismissed in the interest of justice and convenience and because Apple's anticipatory action was an attempt at forum shopping. Finally, Fundamental requests that any remaining claims be transferred to the Eastern District of Texas.

---

 * Apple has identified twelve patents owned by Fundamental: United States Patent Nos. 6,936,936 ("the '936 patent"); 7,239,111 ("the '111 patent"); 7,453,233 ("the '233 patent"); 7,812,565 ("the '565 patent"); 8,193,776 ("the '776 patent"); 8,330,422 ("the '422 patent"); 8,624,550 ("the '550 patent"); 7,358,703 ("the '703 patent"); 7,737,657 ("the '657 patent"); 7,834,586 ("the '586 patent"); 8,169,187 ("the '187 patent"); and 8,232,766 ("the '766 patent").

2

**ANALYSIS**

1. **PERSONAL JURISDICTION.**

As the issue of personal jurisdiction in a declaratory action for non-infringement is "intimately related to patent law," Federal Circuit law governs. *Breckenridge Pharm., Inc., v. Metabolite Labs., Inc.,* 444 F.3d 1356, 1361 (Fed. Cir. 2006). "[W]here the district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction." *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). "In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Ibid.*

"Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG,* 848 F.3d 1346, 1352–53 (Fed. Cir. 2017). As California's long-arm statute permits service of process to the full extent allowed by the due process clause of the United States Constitution, "the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process." *Id.* at 53.

There are three factors to consider when determining whether asserting jurisdiction over an out-of-state defendant comports with due process: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Inamed Corp. v. Kuzmak,* 249 F.3d 1356, 1360 (Fed. Cir. 2001). The first two factors correspond with the "minimum contacts" prong of the *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), analysis while the third factor corresponds with the "fair play and substantial justice" prong of the analysis. *Ibid.*

The Federal Circuit "has acknowledged that the defendant purposefully directs his activities at residents of the forum when the defendant sends a cease-and-desist letter to a

3

potential plaintiff in that particular forum. And a subsequent declaratory judgment action by that potential plaintiff 'arises out of or relates to' the defendant's activity — namely, the cease-and-desist letter." *New World Int'l., Inc. v. Ford Glob. Techs., LLC,* 859 F.3d 1032, 1037 (Fed. Cir. 2017). Under the third part of the test, however, the Federal Circuit has held that it is "improper to predicate personal jurisdiction on the act of sending ordinary cease-and-desist letters into a forum, *without more*." *Id.* at 1038 (emphasis added).

Here, it is undisputed that Fundamental first notified Apple about Fundamental's patent portfolio by letter in December 2015 (Dkt. No. 22-8). The two parties then began discussing potential business arrangements, over phone and email, and attempted to execute an NDA for the negotiations (Dkt. Nos. 22-8, 22-9, 22-10, 22-11). Negotiations lapsed when the parties failed to execute an NDA and when Fundamental started bringing patent infringement actions against several of Apple's competitors (Mot. at 4–5). In August 2017, Fundamental rekindled negotiations by sending a letter where it identified several infringing Apple products (Dkt. No. 22-12). Fundamental then sent infringement claim charts and visited Apple twice in California to discuss the charts and potential business proposals (Dkt. Nos. 22-13, 22-14, 22-15, 22-16). In April 2018, Apple provided Fundamental with invalidity claim charts and told Fundamental it believed Fundamental's patents were invalid (Dkt. No. 22-18). The parties continued discussions through 2018, with Fundamental updating Apple on the results of pending *inter partes review* petitions and ongoing infringement actions against Apple's competitors (Mot. at 5). In July 2018, Fundamental underwent a change in management and the new management visited Apple twice to discuss potential licensing agreements (Dkt. Nos. 22-20, 22-21, 22-22). In December 2018, the parties finally executed an NDA, which had a dispute resolution clause calling for arbitration in San Francisco (Dkt. No. 22-25). The negotiations were ongoing when Apple filed the instant declaratory judgment action.

By sending letters and attending meetings in California, Fundamental has directed its activities to California and satisfied the minimum contacts prong. That its activities were limited to commercialization activities, which cannot be considered for minimum contacts analysis, rather than enforcement activities fails. Federal Circuit precedence describes

commercialization activities as those related to making, using, or selling an invention, whereas Fundamental attempted to enforce its right to exclude during negotiations with Apple. *See Avocent Huntsville Corp. v. Aten Inter. Co., Ltd.,* 552 F.3d 1324, 1336 (Fed. Cir. 2008); *Xilinx*, 848 F.3d at 1354. The claim charts that Apple and Fundamental exchanged while discussing the validity of Fundamental's patents would fall under enforcement activity.

Specific personal jurisdiction here is anchored in *something more* than mere cease-and-desist letters. Since Fundamental has the "required minimum contacts with California to make the exercise of personal jurisdiction presumptively reasonable," Fundamental must make a "compelling case" that jurisdiction is unreasonable. *Xilinx*, 848 F.3d at 1356. Fundamental falls short.

Several factors support the assertion of personal jurisdiction. *First*, as in *Xilinx*, Fundamental met with Apple in the Northern District of California, and "territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there." 848 F.3d at 1357 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). *Second*, Fundamental signed an NDA that agreed to arbitration in San Francisco, which weakens Fundamental's assertion that finding jurisdiction in the Northern District of California would be unduly burdensome or unreasonable. *Third,* Fundamental has not made a compelling case that litigation in California would be unduly burdensome. Fundamental does not dispute that its current managing executives who took part in negotiations live in New Jersey and Pennsylvania, not Texas, requiring travel at either location. The patents were also initially developed at Blackberry and none of the nine named inventors reside in Texas, as eight of the nine are in Canada (Opp. at 10). While information about licensing negotiations may reside in Texas, that still pales in comparison to the technical knowledge that Apple alleges is in their California offices and will be most relevant during trial (Dkt. No. 25-12, ¶¶ 7–13). Fundamental has exhibited the required minimum contacts but failed to make a compelling case that the assertion of personal jurisdiction is unreasonable; thus, the motion to dismiss for lack of personal jurisdiction is **DENIED**.

5

### 2. FIRST-TO-FILE RULE.

Fundamental seeks dismissal of the instant declaratory action in favor of Fundamental's patent infringement action filed in the Eastern District of Texas on February 11, 2019, six days after the complaint was filed for this declaratory action (Mot. at 1–2). Fundamental asserts that the first-to-file rule should not apply as the instant action, it alleges, is an anticipatory suit seeking to forum shop. In addition, Fundamental asserts that the interest of justice and judicial economy favor dismissal in favor of the later-filed infringement action.

Under the Declaratory Judgment Act, federal courts have "unique and substantial discretion" to decline declaratory judgment jurisdiction. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Federal Circuit law controls the question whether to decline jurisdiction over a declaratory action regarding patent rights in light of a later-filed action for patent infringement. *See Serco Servs. Co., L.P. v. Kelley Co., Inc.,* 51 F.3d 1037, 1038 (Fed. Cir. 1995). The general rule favors the forum of the first-filed action, but "the trial court's discretion tempers the preference for the first-filed suit, when such preference should yield to the forum in which all interests are best served." *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993), *abrogated on other grounds by Wilton*, 515 U.S. at 288–289. There must be "sound reason that would make it unjust or inefficient to continue the first-filed action," such as the "convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest." *Ibid.* "In other words, . . . the jurisdiction question is basically the same as a transfer action under § 1404(a)." *Micron Tech., Inc. v. Mosaid Techs., Inc.,* 518 F.3d 897, 904 (Fed. Cir. 2008). Finally, district courts may also consider whether a party intended to preempt another's infringement suit when ruling on a dismissal of a declaratory action, but it cannot be the only consideration in the analysis. *Elecs. For Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347–48 (Fed. Cir. 2005).

The standard to dismiss the first-filed declaratory action amounts to the same as that for transfer, so both will be analyzed together. Here, the balance of factors favors San Francisco.

6

### A. Convenience Factors.

Fundamental has not met its burden to show that the convenience of the parties and witnesses and access to evidence favor the Eastern District of Texas. Fundamental has identified three witnesses that are located in Texas that could offer knowledge on Fundamental's ownership and licensing of its patents, licensing negotiations with Apple, and knowledge of Blackberry's prior ownership of Fundamental's patents (Reply Br. at 10). In addition, Fundamental intends to seek discovery concerning the design and operation of chips from Texas Instruments, which supplies power management circuits to Apple and has a facility in the Eastern District of Texas (Mot. at 16–17).

In contrast, Apple has named four witnesses in California who were involved in developing various aspects of Apple's peripheral charging technology (Dkt. No. 25-1). Furthermore, Apple states that its primary research, design, development, and licensing activities for the accused products and technologies are predominantly located in the Northern District of California (Dkt. No. 25-12, ¶¶ 7–8). Apple also provides a third-party teardown report that identifies Cypress Semiconductor, based in San Jose, as supplying USB controller chips (Dkt. Nos. 25-10, 25-11). Apple asserts that Cypress Semiconductor would be a more relevant witness than Texas Instruments. Finally, Apple points out that the management of Fundamental does not reside in Texas but in Pennsylvania and New Jersey, so they would have to travel to either venue. And, none of the named inventors on Fundamental's asserted patents lives in Texas, so they would also have to travel to either jurisdiction (Opp. at 9–10). Indeed, it is a small mystery why Fundamental has its place of business in the Eastern District of Texas.

On balance, the convenience of the parties weighs heavily for maintaining the controversy here. Apple has developed most of the relevant technology here and most of the employees who worked on the technologies are located in the district. Fundamental, meanwhile, is a patent assertion entity whose management is scattered throughout the country asserting a patent whose original inventors mostly reside in Canada. Fundamental's connection to the Eastern District of Texas is far more tenuous and it is likely that many of Fundamental's

witnesses would have to travel to either district. Thus, the convenience of the parties and witnesses favors maintaining the action in the Northern District of California.

Apple states that the majority of its design and development documents, including technical documents and source code, are located here (Dkt. No. 25-12, ¶¶ 7, 12). Meanwhile, it is unclear if Fundamental has any technical documents in the Eastern District of Texas. On balance, the convenience of the parties and witnesses and access to evidence favor maintenance in this district.

### B. "Interest of Justice" Factors.

Fundamental's strongest argument in favor of dismissal or transfer is that Fundamental has already litigated four of the patents in suit in the Eastern District of Texas, which resulted in two claim construction hearings and orders. Magistrate Judge Payne conducted both hearings and issued both orders in early 2018, and his familiarity with the patents could preserve time and resources (Mot. at 4, 14–15). The strength of this factor, however, is reduced by the fact that all four previous actions have already settled or transferred, which means that there is no possibility of consolidation with the previous cases. Also, here we have twelve patents. Only terms in four of those patents were construed by Magistrate Judge Payne.

As for local interest in the controversy, Apple has resided here since 1976 and Apple allegedly developed the accused charging features in this district. In contrast, the Eastern District of Texas has little interest in this case as the inventions were not developed there and the accused products are sold nationwide. This factor weighs against dismissal or transfer. Finally, the relative court congestion and time to trial slightly favors the Eastern District of Texas where the median time to trial is shorter by seven months (Opp. at 11–12).

### C. Anticipatory Filing.

Fundamental asserts that this action was an "anticipatory filing" and was clearly an attempt at forum shopping. In support, Fundamental primarily relies on an undisputed declaration from Paul Seaman, the current President and CEO of Fundamental. Mr. Seaman states "Apple believed that any offer [Apple] was authorized to make would not be interesting to Fundamental and would probably have led Fundamental to file suit against Apple" and that

8

"Apple expressed the view that the Northern District of California was a good forum for them, and [Apple] believed it increased their probability of success in litigation" (Dkt. No. 22-2, ¶ 17). Fundamental views these statements as a clear admission that Apple expected an imminent, infringement suit, so it preempted that suit with a declaratory action in a venue of its choice. Apple does not dispute the Seaman declaration, yet maintains that the suit was not anticipatory because Apple never received "specific, concrete indications that a suit by defendant was imminent." *Z-Line Designs, Inc. v. Bell'O Intern., LLC,* 218 F.R.D. 663, 665 (N.D. Cal. 2003) (Judge Ronald Whyte).

Although a close call, this order does not find this action to be an anticipatory filing. Apple's statements in the Seaman declaration were not an admission of anticipatory filing. As Mr. Seaman indicated, Apple thought their offer "would *probably* have led Fundamental to file suit against Apple" (Dkt. No. 22-2, ¶ 17 (emphasis added)). Apple could have concluded that an infringement suit was only probable, not imminent, because Fundamental had not given specific, concrete indications of when or under what conditions it would bring its action.

Here, negotiations began over three years ago, with intermittent breaks, and the declaratory relief action was filed twelve weeks after Apple's fourth in-person meeting with Fundamental (Mot. at 5–8). During that lengthy time, there is no indication that Fundamental gave Apple a date, a condition, or any specific and concrete indication that a suit was imminent. Fundamental claims it was "focused" on Apple after resolving its pending litigations. Significantly, however, Fundamental never communicated this focus to Apple (Reply Br. at 6; Opp. at 17). As there was no indication that Fundamental had immediate plans to file suit, Apple could have reasonably believed that the process would continue to drag out by fits and starts (as it had been doing) and that a declaratory judgment action was its best option to expedite a resolution. That Apple attempted to continue negotiations after filing the declaratory action is consistent with that conclusion. *See Sensus USA Inc. v. Badger Meter Inc.,* 2016 WL 5390300, at *4 (N.D. Cal. Sep. 27, 2016) (Judge Lucy H. Koh).

In sum, the convenience factors weigh heavily for maintaining the declaratory action in this district, the interest of justice factors weigh for dismissal or transfer, and this action was not

9

found to be anticipatory. On balance, the preference for the first-filed action was not overcome; thus, the motion to dismiss or transfer is **DENIED**.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss or transfer is **DENIED.**

\*　　　　　　　　　\*　　　　　　　　　\*

Notwithstanding all of the foregoing, it seems clear that both sides agreed to arbitrate the instant dispute in San Francisco. It would be impractical, given the disclosures that have occurred pursuant to the NDA, to litigate this case without using those disclosures. Both sides agreed to arbitrate issues arising out of the NDA. By **MAY 14 AT NOON**, both sides shall **SHOW CAUSE** why this civil action should not be **STAYED** and both sides ordered to resolve this entire patent dispute in arbitration in San Francisco.

**IT IS SO ORDERED.**

Dated: April 30, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE